# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

KATHLEEN KIBLER,

      Plaintiff,

v.                                                                                        No. CIV 17-0486 RB/SCY

GENUINE PARTS COMPANY d/b/a NAPA, or
as NAPA AUTO PARTS, MARTIN VALENTI,
and MICAH KESSLER,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Individual Defendants' Motion to Dismiss Based on Failure to Exhaust Administrative Remedies, filed on May 3, 2017. (Doc. 11.) Jurisdiction arises under 28 U.S.C. § 1332(a).[1] Having considered the submissions of counsel and relevant law, the Court will **DENY** the motion.

## I.    Factual and Procedural Background

At issue in this suit are Plaintiff's claims of age and gender discrimination and retaliation in violation of the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. §§ 28-1-1–15 (1978). Plaintiff worked for Defendant Genuine Parts Company (NAPA) for almost 39 years, most recently as a wholesale manager. (Doc. 1-1 (Compl.) ¶¶ 8, 12; *see also* Doc. 1-8-C.) Plaintiff received numerous awards and recognitions during her career, including "an award for her 2015 sales at an award ceremony in February 2016 . . . ." (Compl. ¶¶ 9, 13.) Nevertheless, NAPA terminated Plaintiff on May 13, 2016, allegedly for "performance" issues. (*Id.* ¶¶ 7, 13.)

---

[1] Plaintiff, a resident of New Mexico, filed suit against Defendant Genuine Parts Company, a Georgia corporation, Defendant Kessler, a citizen of Arizona, and Defendant Valenti, a citizen of Colorado. (*See* Doc. 1 ¶¶ 9.) Plaintiff alleged in her state complaint that Mr. Valenti is a citizen of New Mexico, but Mr. Valenti submitted a Declaration to establish he became a citizen of Colorado at the latest in January 2017, before Plaintiff filed her lawsuit. (*See* Doc. 1-7.) Plaintiff has not disputed Defendant Valenti's citizenship in this action, nor is there any dispute that the amount in controversy is at least $75,000. *See* 28 U.S.C. § 1332(a).

Plaintiff disputes that she was terminated for performance issues and asserts that "[h]er termination was the end result of a series of discriminatory actions taken against her by [Defendants] Valenti and Kessler that began . . . in July 2014." (*Id.* ¶ 14.)

Plaintiff filed a Charge of Discrimination with the EEOC on May 27, 2016. (Doc. 1-8-C.) The Charge of Discrimination form directs the charging party to name "the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others." (*Id.* at 1.) Plaintiff named "NAPA Albuquerque DC" and listed an address in Albuquerque, New Mexico. (*Id.*) Plaintiff did not specifically name Defendants Valenti or Kessler in this section. (*Id.*) Under the "Particulars" section of the form, Plaintiff described the discrimination as follows:

> Statement of Harm: I was hired at NAPA on September 6, 1977, as a Packer, and most recently held the position of Wholesale Manager. During my tenure, I was the first salesperson to hit over $1 million sales in the calendar year. Between 1977 and 2014, I never received any write ups or disciplinary actions. I was a loyal and dedicated employee, during my nearly 39 years of employment with the company. I have received numerous recognition and awards, including multiple plaques for quota performance and top employee. On or about February, 2016, I was introduced by Albuquerque to by [sic] our General Manager as the "Top Dog[,]" . . . and with all my accomplishments with the company I often felt as though I was not a valuable employee. On or about July 28, 2015, I was called into Mr. Valenti's office to have a meeting with him and Mr. Kessler, a month later, on August 31, 2015, Mr. Kessler, informed me that Mr. Valenti would be placing me on a Performance Improvement Plan (PIP) for 120 days in regards to my communication skills and customer follow up. During the 120-days performance review period, I was constantly being called into meetings with Mr. Valenti and Mr. Kessler, and I was accused of discussing my work problems with my peers and customers. This caused an abundant amount of undue stress and a hostile work environment and it in which [sic] resulted in me seeking medical attention. I talked to Ms. Alberta Santistvan [sic], HR, about my situation and she advise [sic] me to elevate my concern to [] Ms. Quin Clifton, Western Division HR Manager. Ms. Quin took over my complaint and came down to do an investigation. During her investigation I turned over numerous emails and documents, including a picture of a penis with sperm shooting out of it that Mr. Kessler, had drawn on a company vehicle while on a business trip that I attended. Following the investigation, there were no changes made to my work environment

2

. . . . My PIP ended on December 31, 2015, without incident, and without prior notification on May 13, 2016, I was terminated.

(*Id.* at 1–2.)

Plaintiff submitted an affidavit and stated that she did not receive "legal advice in the course of filing the Charge of Discrimination." (Doc. 40-1 ¶ 2.) Plaintiff retained her current attorney, Mr. Timothy L. White, on June 13, 2016. (*See* Doc. 19-2; *see also* Doc. 40-1.) Plaintiff stated in her affidavit that she "first contacted Mr. White about the possibility of representing me on June 6, 2016 via email, but [she] did not speak to Mr. White until June 8, 2016, briefly, and only to set an appointment to meet in person." (Doc. 40-1 ¶ 3.)

Defendants submitted an affidavit from Ms. Alberta Santistevan, an employee of NAPA, who stated that on September 28, 2015, Plaintiff said she "had consulted with a lawyer about work-related concerns." (Doc. 42-1 ¶¶ 1–3.) Ms. Santistevan stated that Plaintiff sent her an email on June 3, 2016, which read: "Alberta, I am requesting additional time before I make a decision on the 'Severance Agreement and General Release' papers due to the fact that my lawyer is still reviewing them." (*Id.* ¶ 4.) Ms. Santistevan further stated that Plaintiff sent her another email on June 8, 2016, on which she copied Mr. White and said: "I had to retain a different lawyer do [sic] to the fact that I was not getting any responses back from the original that was looking over the agreement. Is it possible to ask for additional time for my new lawyer to review?" (*Id.* ¶ 5.)

On June 14, 2016, Mr. White emailed Ms. Santistevan, and stated:

We represent Ms. Kibler in the claims she is prepared to bring against your company and Martin Valenti individually arising out of her termination. You probably have seen by now the Charge of Discrimination she has filed with EEOC, and her claims are in summary as stated in that Charge. We are in the process of amending that Charge in order to assert the claims against Mr. Valenti individually, but should your company desire to try to resolve this matter privately without the need of the lawsuit that will follow, please contact this

office. If your company does not wish to discuss resolving this now by agreement, I will be filing suit by June 30 and amending later to bring the age and sex discrimination claims represented in the Charge. Please respond at your earliest opportunity.

(*See* Doc. 21-1 at 3.) Plaintiff never filed an amended Charge. (*See* Doc. 21 at 3.)

On September 1, 2016, Mr. White sent an 18-page letter to Ms. Lisa M. Szafranic, counsel for Defendants NAPA, Valenti, and Kessler, "to see if your client is interested in resolving this now before we go through the entirety of the administrative process with EEOC." (*See* Docs. 1-8 ¶ 2–3; 1-8-A at 5.)[2] Mr. White outlined the bases of Plaintiff's claims for age and gender discrimination and retaliation and described numerous instances of allegedly discriminatory conduct by Defendants Valenti and Kessler. (Doc. 1-8-A at 5–22.) Mr. White concluded, "My client has endured far too much at these mens' [sic] hands, and would prefer to resolve this now before suing your client and these two men, Valenti and Kessler, individually . . . ." (*Id.* at 22.)[3]

Plaintiff asserts that "[o]n October 7, 2016, the parties attempted a mediation with EEOC, after which" Mr. White emailed shared counsel for all three Defendants regarding the action "Kathie Kibler v. NAPA, Valenti and Kessler."[4] (Doc. 19 at 2.) The EEOC issued a Notice of Right to Sue on January 17, 2017 (Doc. 1-8-D), and an Order of Non-Determination on February 3, 2017 (Doc. 1-8-E). The Order of Non-Determination identified the case as "Kathleen Kibler vs NAPA Albuquerque DC," the same parties Plaintiff identified in her initial Charge of Discrimination form. (*See* Docs. 1-8-C; 1-8-E.)

---

[2] The Court refers to the CM/ECF numbering system, as Mr. White's letter is not numbered. Page 5 of Doc. 1-8-A corresponds to the first page of Mr. White's letter.
[3] Again, the Court refers to the CM/ECF numbering system. Page 22 of Doc. 1-8-A corresponds to the last page of Mr. White's letter.
[4] Plaintiff does not clarify which parties participated in the mediation, nor did Plaintiff attach a copy of the referenced email to her response. (Doc. 19 at 2.) Defendants did not, however, dispute that Plaintiff's attorney sent the referenced email. (*See* Doc. 21.)

4

Plaintiff filed suit against the three Defendants in the Second Judicial District Court, County of Bernalillo, State of New Mexico, on March 13, 2017, alleging: (1) discrimination on the basis of sex; (2) discrimination on the basis of age; and (3) retaliation, all in violation of the NMHRA. (Compl.) Defendants removed the case to this Court on April 26, 2017, on the basis of diversity. (Doc. 1.) The Individual Defendants now bring this Motion to Dismiss Based on Failure to Exhaust Administrative Remedies. (Doc. 11.)

## II.     Legal Standard

The Individual Defendants bring their Motion under Rules 12(b)(6) and 12(b)(1). (*See id.* at 3.) The core of Defendants' argument is that Plaintiff's alleged failure to exhaust has deprived this Court of subject matter jurisdiction under Rule 12(b)(1); they do not argue that Plaintiff has failed to state a claim under Rule 12(b)(6). (*See* Doc. 11.) The Court finds it appropriate, therefore, to analyze the Motion under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1).

Motions to dismiss under Rule 12(b)(1) "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1265 (D.N.M. 2011) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (internal citations omitted)). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true." *Id.* (quoting *Alto Eldorado Partners v. City of Santa Fe*, No. Civ. 08-0175 JB/ACT, 2009 WL 1312856, at *8 (D.N.M. Mar. 11, 2009), *aff'd*, 634 F.3d 1170 (10th Cir. 2011) (internal citations omitted)).

"But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations" and may "allow affidavits, other documents, and a limited

evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion."[5] *Id.* (quoting *Alto Eldorado Partners*, 2009 WL 1312856, at *8–9). Here, Defendants attack the facts upon which subject matter jurisdiction is based—that is, whether Plaintiff exhausted her claims against them.

It is clear that jurisdictional facts must ultimately be established by a preponderance of the evidence where they are disputed. *Campos*, 828 F. Supp. 2d at 1271. "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction. . . ." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (quotation and internal citation Romitted). "Facts regarding jurisdictional questions may be determined by reference to affidavits, . . . by a pretrial evidentiary hearing, . . . or at trial when the jurisdictional issue is dependent upon a decision on the merits." *Id.* (citations omitted).

"When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985) (internal citations omitted)). "The 'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial

---

[5] A Court is also "required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.* (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987)). Here, jurisdiction is premised on diversity (*see* Doc. 1), but Plaintiff may not bring her claims under the NMHRA against the Individual Defendants unless she exhausted those claims. *See Benavidez v. Sandia Nat'l Labs.*, 212 F. Supp. 3d 1039, 1065 (D.N.M. 2016). The Court finds that the issue of whether Plaintiff exhausted her claims under the NMHRA, that is, whether the Individual Defendants had sufficient notice of her claims, is not so intertwined with the merits of the case that the Court is required to convert Defendants' Motion into one under Rule 12(b)(6) or Rule 56.

stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *Id.* (citations omitted). Where the court holds a hearing, the plaintiff's burden is increased, and she "has the burden to prove facts supporting jurisdiction by a preponderance of the evidence." *Id.* (citations omitted).

Where, as here, the Court chooses to decide the issue on the written materials alone using a prima facie standard, Plaintiff must prove "by the end of trial the jurisdictional facts by a preponderance of the evidence." *Id.* (citations omitted). In *Federal Deposition Insurance Corp. v. Oaklawn Apartments*, for example, "[t]he district court resolved Appellants' claims of lack of personal jurisdiction and insufficient service by reviewing the pleadings and affidavits" on a motion to dismiss and finding that the defendants had waived those defenses. 959 F.2d at 172, 174. The court did not hold an evidentiary hearing. 959 F.2d at 172, 174–76. In a separate order entered on the same day, the district court granted summary judgment to the plaintiff-appellee on the merits. *Id.* at 173. The defendants appealed, arguing that the court erred in failing to find it had jurisdiction by a preponderance of the evidence. *Id.* at 172. The Tenth Circuit reversed, finding that the district court had erred by deciding the issue of personal jurisdiction on the pleadings and affidavits, but never deciding the issue using the correct preponderance of the evidence standard. *Id.* at 174–76.

While the vast majority of the cases to discuss the prima facie/preponderance of the evidence standards for jurisdictional questions address motions under Rule 12(b)(2) (personal jurisdiction), the Court finds it appropriate to apply the same reasoning to Defendants' motion brought under 12(b)(1) (subject matter jurisdiction). *See*, *e.g.*, *Colo. First Const. Co. v. U.S. Dep't of Hous. & Urban Dev.*, No. CIV.A. 05-CV-00755-L, 2006 WL 355224, at *3 (D. Colo. Feb. 15, 2006); *Damian v. Int'l Metals Trading & Investments, Ltd.*, 243 F. Supp. 3d 1308 (S.D.

Fla. 2017); *Ferrero v. Henderson*, 244 F. Supp. 2d 821, 826 (S.D. Ohio 2002); *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981) (finding that "[t]he principles that [the Ninth Circuit] applied to determinations of personal jurisdiction in *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1284–86 (9th Cir. 1977), are equally applicable to determinations of subject matter jurisdiction"). The Court will deny Defendants' Motion under the prima facie standard, and Plaintiff's claims will be subject to dismissal if she does not prove the jurisdictional facts by a preponderance of the evidence at a later hearing.

### III. Analysis

#### A. Law regarding the exhaustion of administrative remedies under the NMHRA

The NMHRA makes it unlawful for

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity . . . .

N.M. Stat. Ann. § 28-1-7(A). "The NMHRA allows individuals to bring a lawsuit in the appropriate district court[,]" not only against the employer, but also against individual defendants in their personal capacity. *Benavidez v. Sandia Nat'l Labs.*, 212 F. Supp. 3d 1039, 1065, 1066 (D.N.M. 2016); *see also Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001). The NMHRA requires that the individual first exhaust the available administrative remedies before bringing suit. *Benavidez*, 212 F. Supp. 3d at 1065; *Luboyeski v. Hill*, 872 P.2d 353, 355 (N.M. 1994). "To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the

[New Mexico Human Rights Division (NMHRD)] or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the NMHRD." *Campos*, 828 F. Supp. 2d at 1267 (citing *Mitchell-Carr v. McLendon*, 980 P.2d 65, 71 (N.M. 1999)). The New Mexico Supreme Court has found that a district court may lack subject matter jurisdiction to hear an individual's claims under the NMHRA if the person fails to exhaust the administrative remedies. *Mitchell-Carr*, 980 P.2d at 71 (citations omitted).

### B. Plaintiff has exhausted her administrative remedies against the Individual Defendants.

The Individual Defendants argue that Plaintiff failed to exhaust her administrative remedies against them, because she did not specifically name them in the appropriate section on her Charge of Discrimination form. (Doc. 11 at 3–5.) The NMHRA "demands that 'a plaintiff must exhaust his or her administrative remedies ***against a party*** before bringing an action in district court ***against that party***.'" *Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F. Supp. 3d 1107, 1114 (D.N.M. 2015) (quoting *Sonntag*, 22 P.3d at 1193 (subsequent and internal citations omitted)). Because Plaintiff listed only NAPA in the section of the Charge of Discrimination form that directs the charging party to name "the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others," Defendants Kessler and Valenti argue that Plaintiff has failed to exhaust her claims against them. (Doc. 11 at 3–5.) Plaintiff disagrees and contends that authority from this district and the New Mexico Supreme Court supports a finding that she has exhausted her claims against the Individual Defendants. (*See* Doc. 19.)

The New Mexico Supreme Court has examined the same Charge of Discrimination form Plaintiff used and found that because it asks for the name and address of the employing agency, but does not ask for information about any individuals whom the filer may have claims against,

the form does not "provide a fair and adequate opportunity to exhaust administrative remedies against individual actors under the NMHRA . . . ."[6] *Lobato v. State Env't Dep't*, 267 P.3d 65, 67–68 (N.M. 2011). Because information about the names and addresses of such individuals "is critical to preserving judicial remedies . . . under the NMHRA[,]" the form "creates a trap for unwary claimants to forfeit their statutory rights and judicial remedies." *Id.* at 68. Thus, while the claimant in *Lobato* had neither named nor provided addresses for the individuals he intended to assert claims against, but had described the individuals' allegedly discriminatory behavior on the Charge of Discrimination form, the New Mexico Supreme Court held that he had sufficiently exhausted his administrative remedies as to those individuals. *See id.* at 68–69; *Lobato v. N.M. Env't Dep't*, No. 09-CV-1203 BB/RLP, 2011 WL 13137326, at *1 (D.N.M. June 14, 2011).

After *Lobato*, courts have taken care to define an "unwary claimant" as one who filed a Charge of Discrimination form "without the advice of counsel." *See*, *e.g.*, *Benavidez*, 212 F. Supp. 3d at 1084, 1086 (discussing that there was "no indication that, by the time Benavidez signed and submitted the Charge of Discrimination form, she had not already consulted with an attorney[,]" and noting that plaintiff conceded she had not exhausted her remedies as to the individual defendants) (quotation omitted); *Muffoletto*, 157 F. Supp. 3d at 1114 (noting that the claimant "had already consulted with an attorney" before she filed the Charge of Discrimination form and finding that she did "not fit the New Mexico Supreme Court's description of 'unwary' plaintiffs") (citations omitted).

There is no question that Plaintiff named Defendants Kessler and Valenti in the body of her May 27, 2016 Charge of Discrimination form and described some of the allegedly

---

[6] It appears that the NMHRD has published an updated form as of July 2017. *See* https://www.dws.state.nm.us/Portals/0/DM/LaborRelations/Human_Rights_Complaint_Form_0717.pdf available at https://www.dws.state.nm.us/Labor-Relations/Human-Rights/Complaint-Investigation-Process (last visited Sept. 1, 2017).

discriminatory behavior. (*See* Doc. 1-8-C at 1–2.) The issue is whether Plaintiff consulted with an attorney in connection with the filing of her Charge of Discrimination form. Plaintiff submitted a sworn affidavit to establish that she "received no legal advice in the course of filing the Charge of Discrimination form." (Doc. 40-1 ¶ 2.) The Court finds Plaintiff's affidavit compelling—it provides prima facie evidence to show that she was an unwary claimant.

Defendants contest her assertion. (*See* Doc. 42.) They submitted an affidavit to establish that Plaintiff discussed consulting with an attorney as far back as September 28, 2015, and that she consulted an attorney with respect to making "a decision on the 'Severance Agreement and General Release' papers" in early June 2016. (Doc. 42-1 ¶¶ 3, 4.) These statements do not specifically controvert Plaintiff's sworn affidavit. An unwary claimant is one who filed a Charge of Discrimination form without the advice of counsel. That Plaintiff may have consulted an attorney to help her decide whether to sign a severance agreement with NAPA does not necessarily mean that the attorney also helped her file her Charge of Discrimination form. The Court finds Plaintiff has made a prima facie showing that she had not received advice from an attorney about her Charge of Discrimination form. Under *Lobato*, the Court finds Plaintiff was an "unwary claimant" at the time she filed the form.

The Individual Defendants argue, however, that because Plaintiff had the benefit of counsel *after* she filed her form, she was not truly an unwary claimant. (Doc. 21 at 5–10.) Defendants believe that the ultimate query is whether Plaintiff *ever* had a fair and adequate opportunity to exhaust. (*Id.*) In other words, Defendants argue that Plaintiff failed to exhaust because she did not file an *amended* Charge of Discrimination form after she retained her attorney.

Defendants believe that the court's decision in *Welch v. City of Albuquerque*, No. 11-cv-0700 KG-SCY, Mem. Op. & Order, Doc. 267 (D.N.M. April 4, 2017), supports their position.[7] (Doc. 21 at 5.) In *Welch*, the court declined to grant the individual defendants summary judgment on this issue, because there was no evidence regarding whether the plaintiff was represented at the time she filed her Charge of Discrimination form, or where she found that form.[8] *Welch* is easily distinguishable, both because the court was examining the issue using a summary judgment standard, and because Plaintiff has carried her burden under Rule 12(b)(1) here to show that she did not have an attorney's assistance in filling out her own form. (*See* Doc. 40-1.) Ultimately, Defendants have not pointed to any statutory language or case law that would *require* Plaintiff to file an amended complaint in such a circumstance.

In deciding whether Plaintiff should have been required to file an amended form after she retained counsel, the Court turns to the purpose behind requiring exhaustion: notice. Claimants are required to exhaust their administrative remedies before bringing suit in order to give notice to the respondents and to give the respondents "an opportunity to resolve the dispute in administrative proceedings before the NMHRD, rather than before court as defendants in a judicial proceeding." *Lobato*, 267 P.3d at 68 (citing N.M. Stat. Ann. § 28-1-10(B); 9.1.1.8(H)

---

[7] Defendants also rely on authority discussing exhaustion under Title VII. (Doc. 21 at 2–4 (citing *Campos*, 82 F. Supp. 2d at 1276–77; *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311–12 (10th Cir. 1980); *Holloman v. Tulsa Gamma Ray, Inc.*, 2013 WL 4647736, at *1–2 (W.D. Okla. Aug. 29, 2013)). This authority is not binding on the Court where the issue is exhaustion under the NMHRA.

[8] Defendants suggest the decision in *Muffoletto v. Christus St. Vincent Regional Medical Center*, 157 F. Supp. 3d 1107 (D.N.M. 2015), supports their position. (*See* Doc. 21 at 5.) In *Muffoletto*, the court found that the plaintiff was not an unwary claimant under the *Lobato* standard, because she had already consulted with an attorney by the time she filed her form. 157 F. Supp. 3d at 1114. Following this finding, the court discussed language on the NMHRD website that advises claimants without attorneys to consult NMHRD staff before filing. *Id.* at 1114–15 (quoting the following language: "Effective March 1, 2010, parties represented by counsel will be expected to prepare their own FORMS for initiating a Human Rights Claim. Parties who are not represented by an attorney ***should*** contact the Human Rights Bureau for assistance in completing the necessary paperwork to file a complaint.") (emphasis added) (quoting Filing a Complaint of Discrimination, New Mexico Dep't of Workforce Solutions, http://www.dws.state.nm.us/Labor–Relations/Human–Rights/Filing–a–Complaint–of–Discrimination). Defendants admit that there is no evidence Plaintiff obtained her form from that website. (Doc. 21 at 6 n.2.) Even if there was such evidence, the Court declines to find here that the website language, which says claimants "***should*** contact the" NMHRD, affirmatively adds such a burden to a claimant.

NMAC). Based on this purpose, the New Mexico Supreme Court found in *Lobato* that "barring Plaintiff's judicial remedy solely because he followed explicit and misleading instructions in the NMHRD's official complaint form is a far greater injustice than the less significant effect imposed on Defendants by the lack of formal individual notice in the antecedent administrative proceedings." *Lobato*, 267 P.3d at 68. As in *Lobato*, Plaintiff's lawsuit stems from "the very incidents reported in the" misleading form. *See id.* at 69. The behavior Plaintiff described in her form includes "constant" meetings with Defendants Kessler and Valenti and unwarranted discipline that Plaintiff alleged created a "hostile work environment." (*See* Doc. 1-8-C at 1–2.) Additionally, Plaintiff described an incident in which Defendant Kessler drew a sexually graphic picture on a company vehicle while on a business trip that Plaintiff attended. (*Id.* at 2.) Plaintiff alleged that the date the discrimination began—August 31, 2015—was the same date Defendant Kessler informed her that Defendant Valenti would place her on a Performance Improvement Plan. (*Id.* at 1.)

Defendants argue further that they were denied sufficient notice, because Mr. White's June 14, 2016 letter stated that Plaintiff was prepared to bring claims against NAPA "and Martin Valenti individually . . . ." (Docs. 21 at 8;[9] 21-1.) Not only did Mr. White fail to mention Mr. Kessler, but he also failed to follow through with his statement that he was "in the process of amending [the] Charge in order to assert the claims against Mr. Valenti individually . . . ." (Doc. 21-1.) If this were the final communication between counsel for the parties, Mr. Kessler might have a leg to stand on. However, Mr. White sent a second letter on September 1, 2016, and described Plaintiff's allegations against Defendants Kessler and Valenti in detail over 18 pages. (*See* Doc. 1-8-A at 5–22.) More than half of these allegations involved Mr. Kessler. (*See id.*) Mr. White concluded the letter by explaining that his "client has endured far too much at these mens'

---

[9] Defendants misidentify the person Mr. White referred to in the June 14 letter as Mr. Kessler. (Doc. 21 at 8.)

[sic] hands, and would prefer to resolve this now *before suing your client and these two men*, Valenti and Kessler, individually . . . ." (*Id.* at 22 (emphasis added).) Shortly after that letter, "the parties attempted a mediation with EEOC, after which" Mr. White emailed counsel for all three Defendants regarding the action "Kathie Kibler v. NAPA, Valenti and Kessler." (Doc. 19 at 2.) The Court finds that Plaintiff has presented evidence to show that the Individual Defendants had sufficient notice of the claims pending against them, and there is no evidence the Individual Defendants have suffered prejudice from Plaintiff's failure to either name them in the correct blank on the Charge of Discrimination form, or to file an amended form. For these reasons, the Court will deny Defendants' Motion.

## IV.   Conclusion

While Plaintiff did not specifically name the Individual Defendants in the appropriate box on her Charge of Discrimination form, she has made a prima facie showing that she exhausted her administrative remedies as to both Mr. Valenti and Mr. Kessler. Plaintiff will be required to establish these jurisdictional facts by a preponderance of the evidence at a later hearing.

**THEREFORE,**

**IT IS ORDERED** that Individual Defendants' Motion to Dismiss Based on Failure to Exhaust Administrative Remedies (Doc. 11) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**